Margurite SENIGAR, individually and as Representative of the Estate of Joseph Senigar, Deceased, and Patrick Senigar, Sandra L. Senigar, Aline B. Robinson, and Lisa Marie Bowie, Appellants,

v.

WATERMAN STEAMSHIP CORP., Appellee.

No. 09–95–399 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 6, 1997.

Decided May 15, 1997.

Terry Wood, Crutchfield, DeCordova & Chaveaux, Beaumont, for appellants.

Charles W. Seymore, Houston, Hubert Oxford, III, Michael K. Eaves, Benckenstein & Oxford, Beaumont, for appellee.

Before BURGESS, STOVER and FARRIS, JJ.

**OPINION**

FARRIS,* Justice.

This is a wrongful death case in which the issue is whether or not Waterman Steamship Corporation owed a duty, under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950 (West 1986), to warn Joseph Senigar of the danger of being exposed to guar gum dust. The appellants are Senigar's survivors. On appeal appellants complain the trial court erred in granting Waterman's motion for summary judgment because (1) as a matter of law it owed a duty of reasonable care to Senigar and (2) there are fact issues that preclude summary judgment. We affirm the judgment because, as a matter of law, Waterman did not owe a duty to Senigar.

Senigar, a harbor worker employed by the Port of Port Arthur, became ill while cleaning up around a hopper that had been used to transfer guar gum from Waterman's barge to rail cars. He died shortly afterward.

---

* The Honorable David Farris, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b)

(Vernon 1988).

Senigar's exposure, illness, and death occurred after Waterman's barge had left port. The hopper belonged to the Port of Port Arthur and was a part of the port facility.

Appellants sued Waterman as the shipowner, the shipping agent and the company that owned and shipped the guar gum.[1] Appellants alleged the guar gum was defective and unreasonably dangerous. They alleged the defendants entered the guar gum into the stream of trade, failed to give adequate warning of the danger of guar gum, and negligently exposed Senigar to the guar gum.

Waterman moved for summary judgment contending either it owed no duty to Senigar after it relinquished control of the guar gum cargo or any duty it owed was fulfilled. Appellants responded asserting Waterman knew exposure to guar gum was dangerous, had a duty to warn of that danger, and failed to warn Senigar. The trial court granted Waterman's summary judgment motion and severed appellants' suit against Waterman from their suit against the remaining defendants.

Appellants have not challenged Waterman's assertion their only cause of action against it is under the Longshoreman and Harbor Workers' Act, 33 U.S.C.A. §§ 901–950 (West 1986); accordingly, the question before us is whether or not Waterman owed Senigar a duty under the act to warn him of the danger of exposure to guar gum dust and was negligent in failing to warn him. 33 U.S.C.A. § 905(b) (West 1986). In their first point of error appellants argue the question is determined by whether Waterman knew or at the time of Senigar's exposure should have known the guar gum cargo was hazardous.

By arguing the question in this case is determined by Waterman's knowledge of the risk appellants attempt to impose a duty greater than any created by the Act. The Act allows a longshoreman or harbor worker to recover for personal injury caused by the negligence of a shipowner. 33 U.S.C.A. § 905(b) (West 1986). Because Congress did not specify the acts or omissions that constitute negligence, shipowners' duties to persons covered by the Act must be determined from a review of case law.

In *Scindia* the Supreme Court established three duties owed by a shipowner to longshoreman and harbor workers:

(1) The "turnover duty," relating to the ship's condition upon the commencement of stevedoring operations;

(2) the duty to exercise reasonable care to prevent injuries in areas that remain under the active control of the vessel; and

(3) the "duty to intervene," in cargo operations in areas under the principal control of the stevedore.

*Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167–178, 101 S.Ct. 1614, 1622–28, 68 L.Ed.2d 1 (1981).[2] Beyond these specific duties a shipowner has no general duty to supervise or inspect. *Id.* at 172, 101 S.Ct. at 1624.

In asserting the determinative issue is whether or not Waterman knew or should have known of the hazards of guar gum, appellants attempt to extend a shipowner's duties beyond (1) the condition of the ship, (2) areas remaining under the control of the vessel and (3) cargo operations. In support of this effort appellants contend the same determinative issue was before the Fifth Circuit in *Castorina* and imply that court recognized a duty to warn of a hazardous cargo. *See Castorina v. Lykes Brothers Steamship Co.*, 758 F.2d 1025 (5th Cir.1985), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). Appellants misread *Castorina*.

In *Castorina* the injured longshoreman alleged he was exposed to asbestos fibers while off loading the shipowner's ships. *Id.* at 1027. Castorina alleged Lykes Brothers was negligent in stowing asbestos, in the holds of

---

1. Appellants also sued the Port of Port Arthur in a separate suit which was consolidated with this case. The Port was granted summary judgment and named as an appellee in this appeal. Appellants have dismissed their appeal of the Port's summary judgment. In addition, the Port was a subscriber under the Workers' Compensation Act.

2. In *Scindia* a broken wench used to load cargo, *Id.* at 159–160, 101 S.Ct. at 1617–1618, and known to the shipowner, *Id.* was found to create an "unreasonable risk of harm," *Id.* at 176–178, 101 S.Ct. at 1626–1628, giving rise to the question of whether or not the shipowner had a duty to intervene in cargo loading by the stevedore. *Id.* at 178, 101 S.Ct. at 1627.

its ships, in loose-weave burlap bags that allowed fibers to escape into the air. *Id.* at 1034. Castorina contended Lykes Brothers knew or should have known that exposure to asbestos could cause injury. *Id.* The Court held once stevedoring operations began Lykes Brothers would be liable for open and obvious dangerous conditions only if it had knowledge of the danger and that the stevedore would not take adequate precautions to eliminate the danger. *Id.* at 1035. The Court affirmed judgment for Lykes Brothers because there was no evidence it knew or should have known that exposure to asbestos could cause injury. *Id.* at 1034.

*Castorina* did not acknowledge a duty that exceeds those established by the Supreme Court in *Scindia* because its facts were congruous with the *Scindia* duties. In contrast, to sustain appellants' assertion in this case would require us to exceed the limits of *Scindia* and impose a duty on the shipowner to warn of risk of injury related to the condition of the cargo, unrelated to the ship, and occurring after activities covered by the Act had ended. Accordingly, we overrule appellants' first point of error. Because we have held Waterman owed no duty to Senigar it is unnecessary to address appellants' second point of error complaining documents offered in opposition to summary judgment raised a material fact issue. The judgment is affirmed.

AFFIRMED.